[Civ. No. 320. Fifth Dist. June 12, 1964.]

HAZEL GOODWIN, Plaintiff and Appellant, v. MARI-JEAN ELIZABETH BRYANT et al., Defendants and Respondents.

Myrtle M. Burgess for Plaintiff and Appellant.

Creede, Dawson & McElrath and J. M. McElrath for Defendants and Respondents.

CONLEY, P. J.—In an action for damages resulting from an intersection collision in Visalia, the appellant appeals from a judgment in favor of the defendants after trial before a jury. In the complaint, the plaintiff alleged a cause of action against the minor driver, Marijean Elizabeth Bryant, on the theory of negligence and against her parents on a theory of imputed negligence.

The record shows that plaintiff was driving in a westerly direction on Willow Street in Visalia at about 3:30 p.m. on December 11, 1961, at a speed which she estimated to be between 15 and 25 miles per hour; the weather was clear and the roadway dry. As plaintiff approached the blind, uncontrolled intersection, she observed defendant's automobile which was being driven in a northerly direction on Garden Street. She was unable to testify how far the Bryant car was from the intersection when she first observed it, and she could not at that time accurately estimate its speed; however, she believed that it was traveling slower than it proved to be and that she had time to clear the intersection. She momentarily looked away; then, just as she entered the intersection, she again observed the Bryant car, as it was about to enter the intersection, and applied her brakes, but she did not know whether they were effective. The right front of defendant's car struck the left front side of plaintiff's automobile. The investigating officer placed the point of collision at approximately the middle of the intersection. Plaintiff's car left no skid marks before the collision, but there were approximately 24 feet of brush-type skid marks as the car veered off from the point of impact and stopped against the northwest curb. The defendant's car laid down 18 feet of skid marks from the right front wheel and 7½ feet of skid marks from the left front wheel before the impact and approximately 3 feet of right and left front brush-type skid marks after the collision. A brush-type skid mark indicates that the vehicle which deposited it was moving sideways.

On the appeal the plaintiff alleges that the evidence does not justify the verdict and complains specifically that instructions on three subjects were prejudicially erroneous. The brief of plaintiff contains a short statement of her concept of the evidence from which she believes the jury should have found that the defendant was negligent, that defendant's negligence was the sole proximate cause of the collision, that the plaintiff was free from contributory fault and that, therefore, she should have recovered.

It is true that there is evidence which, considered alone, would have fully justified a verdict for plaintiff. She testified that at the time she first observed the defendant's automobile it appeared far enough back from the intersection and traveling at such a speed that she judged she could safely proceed through the intersection. The defendant testified that when she was approximately a car-length from the intersection she looked to her right and there were no automobiles within her vision; that she saw a car coming from her left, slowed, and then accelerated to go through the intersection. Mr. Jerome Donald Domier, an eyewitness, testified that at the time of the accident he was a criminal investigator for the Tulare County District Attorney's office; that he had officially investigated and reported on numerous automobile accidents; that he saw the defendant's vehicle northbound on Garden Street prior to the time it reached the intersection; that it was then traveling at a speed of 35 to 40 miles an hour and that he believed it was accelerating as it entered the intersection. He also testified that he observed the plaintiff's vehicle; that it was "traveling very slow" and that he believed it entered the intersection first.

Larry Flynn, also an eyewitness, testified that he was an investigator for the office of the district attorney and the welfare department in Tulare County; that he noticed the defendant's automobile before it entered the intersection and that it was approaching the intersection at an excessive rate of speed; and that he then exclaimed to his partner, witness Domier, "Do you see how fast that car was going? Lucky we weren't in the intersection."

The contention by plaintiff that the evidence does not justify the verdict cannot be upheld in view of the traditional right of a jury to analyze the facts and bring in a verdict accordingly. The testimonial record, viewed as a whole, discloses evidence which factually could have supported a verdict for either party; the evidence is not so clear or so free from conflict that a reviewing court can make a determination of negligence or contributory negligence as a matter of law.

Turning to the questioned instructions, we find three subjects that concern the appellant:

1) It is claimed that the court erred in giving any instructions at all on the question of assumption of the risk, and in any event that their form was clearly improper under current authority;

2) complaint is made concerning an instruction relative to overloading a passenger automobile, which the appellant says was not applicable under the facts of the case; and

3) it is said that the instruction on the standard of care applicable to a minor in driving on the highway was erroneous and misleading.

Plaintiff first charges that it was error to instruct on the doctrine of assumption of risk. The court prefaced each instruction with its own comments. ▮▮▮ The instructions of which complaint is made and the comments of the trial judge are as follows:

''The next series of instructions deal with the law relating to the assumption of risk and distinguishes assumption of risk from contributory negligence. Reading:

'' 'We have a legal principle commonly referred to by the term ''assumption of risk.'' It now will be explained to you:

'' 'A person is said to assume a risk when she freely, voluntarily and knowingly manifests her assent to dangerous conduct or to the creation or maintenance of a dangerous condition, and voluntarily exposes herself to that danger, or when she knows that a danger exists in either [*sic*] the conduct of another, and voluntarily places herself, or remains, within the area of danger.

'' 'A person who this [*sic*] assumed a risk is not entitled to recover for damage caused her without intention and which resulted from the dangerous condition or conduct to which she thus exposed herself.' '' (BAJI No. 207; Defendants' 19.)

''End reading. The next one is in the same series, tells us about the aspect of voluntariness and the two elements that must be present. Reading:

'' 'It should be noted that to bar recovery, assumption of risk must be voluntary. To be voluntary, these two factors must be present: First, the person in question must have actual knowledge of the danger. Second, she must have freedom of choice. This freedom of choice must come from circumstances that provide her a reasonable opportunity, without violating any legal or moral duty, to safely refuse to expose herself to the danger in question.' '' (BAJI No. 207-B; Defendants' No. 18.)

''End reading, and the next instruction deals with the difference between contributory negligence and assumption of risk. Reading:

'' 'Your attention is called to a distinction between con-

tributory negligence and assumption of risk. As said elsewhere in these instructions, an essential factor in contributory negligence is that it be a proximate cause of the injury of which a person thereafter complains. But assumption of risk, if it meets with the requirements of the law as stated to you, will bar recovery for damage although it plays no part in causing the accident except merely to expose the person to the danger.' '' (BAJI No.207-C; Defendants' No. 17.)

''End reading. In determining whether or not a person—the next instruction relates to the elements that you consider, the things you consider in determining this matter of assumption of risk. Reading:

'' 'In determining whether or not a person had knowledge of a dangerous situation and whether, with such knowledge, she assented to or assumed a risk so as to bar recovery by her of damages for injury, you may consider her age, experience and capacity along with all the other surrounding circumstances as shown by the evidence.

'' 'When we are concerned with a question as to the possible knowledge that may have existed in the mind of another person at a certain time, we must, of necessity, look to the indirect evidence, unless she has admitted having such knowledge, and we may draw from that evidence whatever inferences our judgment directs to be reasonable.' '' (BAJI No.207-D; Defendants' No. 16.)

These instructions constituted serious error under the impact of two recent Supreme Court decisions (*Vierra* v. *Fifth Avenue Rental Service,* 60 Cal.2d 266 [32 Cal.Rptr. 193, 383 P.2d 777] ; *Shahinian* v. *McCormick,* 59 Cal.2d 554 [30 Cal. Rptr. 521, 381 P.2d 377]). The error is double in aspect. The instructions should not have been given at all because this is not a case in which assumption of risk is applicable as a defense and, furthermore, the form of the instructions is erroneous in that they leave out an essential element of the doctrine, that is to say, knowledge on the part of the person assuming the risk of its magnitude.

Three of these instructions are substantially identical with those given by the trial court and approved by the appellate court in the case of *Ching Yee* v. *Dy Foon,* 143 Cal.App.2d 129, 137-138 [299 P.2d 668], but subsequently they were condemned in *Shahinian* v. *McCormick, supra,* 59 Cal.2d 554, 566-567, where the Supreme Court said: ''Even if the doctrine of assumption of risk were here applicable, the in-

structions given on it were inadequate. The jury was instructed that in order to find that plaintiff assumed the risk they must first find (1) that he had actual knowledge of the danger and (2) had freedom of choice. These instructions did not, as would the instructions requested by plaintiff but refused by the trial court, tell the jury that they must also find that he appreciated the magnitude of that risk. The series of instructions given by the trial court were approved in *Ching Yee* v. *Dy Foon,* 143 Cal.App.2d 129, 138-139 [299 P.2d 668], where the court held that the term 'actual knowledge of the danger' expresses the same thought as 'appreciation of the danger,' that is, that the two phrases are interchangeable.

"However, the recent opinions of this court dealing with the problem of assumption of risk have settled this problem contrary to the *Ching Yee* case. Actual knowledge of the particular risk and appreciation of the magnitude thereof are not interchangeable but are independent and essential elements of the doctrine. [Citations.] The two elements are distinct concepts, intended to convey two independent ideas to the jury. Proper instructions should embody both concepts. Thus the instructions given on the doctrine were inadequate."

The jury was told that but two factors need be present to bring the doctrine into play: that the plaintiff had actual knowledge of the danger and that she had freedom of choice. Nowhere in the instructions given was the jury told that the plaintiff must have appreciated the magnitude of the risk.

■ The principle that a court owes a duty to instruct on every theory of the case raised by the pleadings and finding support in the evidence (*Daniels* v. *City & County of San Francisco,* 40 Cal.2d 614 [255 P.2d 785]) and the fact that defendants pleaded assumption of risk as an affirmative defense do not excuse the inclusion of that issue in the instructions as the evidence on the subject was not sufficient.

■ Instructions covering the doctrine are properly given only when the evidence shows that the accident arose from a danger of which the victim had actual, as distinguished from constructive, knowledge prior to the happening of the accident, that the victim appreciated the nature and magnitude of the specific danger involved, and that she voluntarily chose to enter, or to remain in, the zone of known danger and thus to accept the risk of injury involved.

Plaintiff correctly points out that there is no evidence, either express or implied, in the record that the plaintiff

knew the defendant intended to speed up after plaintiff first observed her car, or that plaintiff knew or had reason to know that the defendant would proceed into the intersection without looking or seeing, and that there was no evidence, direct or indirect, that she had any knowledge of the magnitude of the risk which she faced. It is clear from the authorities that the nature and magnitude of the risks undertaken by one against whom this special defense may be pleaded must be fully known and appreciated. (*Hidden* v. *Malinoff*, 174 Cal.App.2d 845 [345 P.2d 499] ; *Hook* v. *Point Montara Fire etc. Dist.*, 213 Cal.App.2d 96 [28 Cal.Rptr. 560] ; *Johnston* v. *Orlando*, 131 Cal.App.2d 705, 710-711 [281 P.2d 357] ; *Prescott* v. *Ralph's Grocery Co.*, 42 Cal.2d 158 [265 P.2d 904] ; *Hawk* v. *City of Newport Beach*, 46 Cal.2d 213 [293 P.2d 48] ; *McAllister* v. *Cumming*, 191 Cal.App.2d 1 [12 Cal.Rptr. 418] ; *Hartlerode* v. *Edwardsen*, 219 Cal.App.2d 517 [33 Cal.Rptr. 346].)

That the giving of instructions on assumption of risk in cases where the evidence does not support the doctrine may constitute prejudicial error, is held in *Vierra* v. *Fifth Avenue Rental Service, supra*, 60 Cal.2d 266 at page 275, where the court said: "The error in instructing on the doctrine was clearly prejudicial. It cannot be said that in absence of the error a different verdict would not have been probable. While the evidence may be sufficient to warrant instructions on contributory negligence, certainly it cannot be said that such contributive negligence appears as a matter of law. The question of contributory negligence was a question of fact for the jury. But we cannot say that the verdict was based on contributory negligence and that the instructions on assumption of risk were simply surplusage. Under the instructions, the jury could have found no contributory negligence but assumption of risk. That being so the instructions on that doctrine were prejudicial. This requires a reversal as to both defendants."

So, here. The question of contributory negligence is close. Whether plaintiff was contributively at fault in observing the defendant's car, looking away, and then, too late to avoid an impact, again observing the car, is a question on which minds may reasonably differ and it cannot be said as a matter of law that the verdict is based upon that defense.

As opposed to the plaintiff's argument with respect to these instructions, the respondent depends upon cases which approach, but do not conclude, the subject and which are

made ineffective here by the specific holding in the recent cases already cited. The contention that the plaintiff must have known of the magnitude of the danger and the risk she was taking is pure guesswork and the cases cited are not pertinent or persuasive. (*Ching Yee* v. *Dy Foon, supra,* 143 Cal.App.2d 129; *Gallegos* v. *Nash, San Francsico,* 137 Cal. App.2d 14 [289 P.2d 835]; *Gomes* v. *Byrne,* 51 Cal.2d 418 [333 P.2d 754]; *Wilmot* v. *Golden Gate Investment Co.,* 41 Cal.App.2d 664 [107 P.2d 263].)

 Appellant next objects to the trial court's instruction in the language of the Vehicle Code, section 21700: " 'No person shall drive a vehicle when it is so loaded or when there are in the front seat such number of persons as to obstruct the view of the driver to the front or sides of the vehicle or as to interfere with the driver's control over the driving mechanism of the vehicle.' '' The evidence shows that there were three adult persons in the front seat; plaintiff in the driver's position, Dorothy Winters seated in the middle, and J. B. Winters at the right, and that there were five children seated in the back seat. Appellant urges that the statute does not concern itself with distractions created by passengers not dealing with overloading. In any event, the uncontradicted evidence of plaintiff was to the effect that there was no conversation at the time of, or immediately prior to, the accident, and that the children in the rear seat were not causing any difficulty. Respondent concedes that plaintiff's testimony was as related and does not point to any contrary evidence. However, defendant contends that the jury was under no obligation to believe the plaintiff and that common human experience justifies an inference that when eight people, five of whom are children of tender years, are riding in a car, there is likely to be some noise, movement and distraction. She claims that the jury was entitled to infer that the plaintiff's testimony that she and her passengers were riding along in complete silence was simply not true, and that the car was loaded and occupied in such a manner as to interfere with the driver's control of the vehicle.

Our independent research has developed only two California cases with parallel factual situations which are *Linde* v. *Emmick,* 16 Cal.App.2d 676 [61 P.2d 338], and *Cox* v. *City of Los Angeles,* 100 Cal.App.2d 378 [223 P.2d 868]. While in each of those cases there were three persons on the front seat of a car, there was an additional factor shown by the evidence. In the *Linde* case, the friend seated in the

middle of the front seat was intoxicated and restless, and he had to be held in place, all of which concerned the driver as to his condition. A drunken person weaving about in the seat with the driver is undoubtedly a distraction. In the *Cox* decision the width of the seat of an earlier model of automobile as well as the average weight of the three individuals (from which an inference of the size of their bodies could be drawn) was before the jury. In our case, we do not have the "something more." The evidence does not disclose the width of the car seat, or the weights or sizes of the individuals. We have three persons in the front seat of a modern car and nothing more. And we have the further uncontradicted evidence that the other automobile was approaching from the driver's left, so that the mere presence of the two other riders in the same seat but to the right of the driver could not possibly interfere with her vision as to impending danger approaching from the left. ■ There is also general knowledge that automobile seats are wider today than they once were, and that three people often ride in such seats without any factor of overcrowding. ■ The record, as it stands, does not justify the giving of the instruction.

■ The third instructional subject which is attacked by the appellant as prejudicially unjustified relates to speed on the part of the minor defendant. This instruction contains the following language: "A child is not held to the same standard of conduct as an adult. She is only required to exercise the amount of care which ordinarily is exercised by children of like age, experience and intelligence under similar circumstances. It is for you to determine the degree of intelligence and experience of the defendant, Marijean Elizabeth Bryant, and whether her conduct was such as might reasonably have been expected of a child of her age, experience and intelligence, acting under similar circumstances.

"The rule just stated applies when a child is charged with having violated a statute or the evidence shows such a violation. However, the violation of a statute by a child is a factor to be considered in determining whether the conduct of the child was negligent. The question whether the child was negligent still must be answered by the standard applicable to children as I have stated it to you."

Plaintiff points out that when an individual is old enough to secure a license to drive on the highway, she should be bound by the same motor vehicle code rules as an older person. ■ However, the Supreme Court has specifically ruled

that the instruction with respect to a minor involved in an automobile collision is correct (*Lehmuth* v. *Long Beach Unified Sch. Dist.*, 53 Cal.2d 544, 554-555 [2 Cal.Rptr. 279, 348 P.2d 887]), and as an intermediate appellate court we are bound by the foregoing rule. (*Auto Equity Sales, Inc.* v. *Superior Court*, 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Accordingly, the instruction must be approved by us.

When viewed in the light of *Vierra* v. *Fifth Avenue Rental Service, supra,* 60 Cal.2d 266, at page 275, and *Shahinian* v. *McCormick, supra,* 59 Cal.2d 554, the giving of the instructions on the assumption of risk doctrine was an error of such magnitude that a reversal must follow. Furthermore, there was not sufficient evidence to warrant the giving of the instruction on overloading.

The judgment is reversed.

Brown (R.M.), J., and Stone, J., concurred.