549 P.2d 210

**Hezekiah McGRIFF, Jr., Appellant,**

v.

**Snelson W. McGRIFF and Lillian McGriff, his wife, Appellees.**

**No. I CA–CIV 2713.**

Court of Appeals of Arizona,
Division 1,
Department B.

May 4, 1976.
Rehearing Denied June 14, 1976.
Review Granted July 13, 1976.

Kleinman, Carroll & Kleinman, by Jan L. Kleinman, Phoenix, for appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P. C., by Michael E. Woolf, Jolyon Grant, Phoenix, for appellees.

## OPINION

WREN, Judge.

The appellant, plaintiff below, has appealed from an adverse jury verdict and raises the following issues for our consideration: Was it reversible error for the trial court to instruct the jury on assumption of the risk and contributory negligence; and to refuse to instruct on res ipsa loquitur?

Plaintiff, Hezekiah McGriff, was a passenger in a vehicle being driven by his brother, defendant Snelson W. McGriff, when it left the roadway, struck a tree and overturned several times. The vehicle, also occupied by the driver's wife, defendant Lillian McGriff, was being driven east on highway US–66 from Los Angeles, California, to Phoenix, Arizona, on the return leg of a trip that had commenced in Phoenix the day before. The facts are almost conclusive that defendant went to sleep while driving. With that causal factor in mind and with defendants, appellees herein, asserting the defense of assumption of the risk and contributory negligence as to that factor, we have retraced the sleep aspects of the trip.

Plaintiff had driven the automobile from Phoenix to Los Angeles, having left Phoenix at approximately 1:00 a. m. on the morning of February 27, 1972. Defendant admittedly slept all or most of the way except for a coffee stop at Indio. They arrived in Los Angeles several hours later at approximately 7:00 a. m. The trip was being made in order to visit a sister who was ill. After visiting her in the hospital at Los Angeles, defendant went to sleep on the evening of February 27 at approximately 10:00 p. m. at his sister's home. He was later awakened by a phone call informing him that plaintiff had to return home immediately. The following morning at approximately 1:00 a. m. plaintiff and defendant started their return. The plaintiff suggested that defendant begin the drive and defendant replied "Well, I'll try it." Defendant then drove a few miles from Los Angeles to Pomona, at which time defendant stated that he was getting too drowsy and could not drive any farther. He suggested to plaintiff that they should get a motel room. However, plaintiff took the wheel and drove the vehicle to Blythe, California. The defendant admittedly slept all the way from Pomona to Blythe, although he contended that he did not get any restful sleep. The plaintiff stopped the vehicle in Blythe and defend-ant started driving again at plaintiff's request. Approximately 40 miles later, around 5:30 a. m., and while plaintiff was sleeping, the accident occurred.

## ASSUMPTION OF THE RISK

 Initially it might be well to note that assumption of the risk requires the presence of the following elements set forth in *Hildebrand v. Minyard,* 16 Ariz. App. 583, 585, 494 P.2d 1328, 1330 (1972):

"(1) There must be a risk of harm to plaintiff caused by defendant's conduct or by the condition of the defendant's land or chattels;

"(2) Plaintiff must have actual knowledge of the particular risk and appreciate its magnitude. *Vierra v. Fifth Avenue Rental Service,* 60 Cal.2d 266, 32 Cal.Rptr. 193, 383 P.2d 777 (1963); *Goodwin v. Bryant,* 227 Cal.App.2d 785, 39 Cal.Rptr. 132 (1964); W. Prosser, *Law of Torts* 447–48 (4th ed. 1971). (General knowledge of 'a danger' is not sufficient. *Vierra v. Fifth Avenue Rental Service,* supra); and,

"(3) The plaintiff must voluntarily choose to enter or remain within the area of the risk under circumstances that manifest his willingness to accept that particular risk.

". . . [T]he touchstone of implied assumption of risk is 'consent'. Contributory negligence arises when the plaintiff fails to exercise due care. Assumption of risk arises regardless of the due care used. It is based, fundamentally, on consent. Contributory negligence is not. *Vierra v. Fifth Avenue Rental Service,* supra. [T]he consent is manifested by the plaintiff's actions *after he has been informed of the nature and magnitude of the specific danger involved.* Therefore, when the plaintiff voluntarily enters into some relationship with the defendant, with knowledge that the defendant will not protect him against the risk, he may then be regarded as tacitly or impliedly consenting to the negligence, and agreeing to take a chance. Thus he may ac-

cept employment knowing that he is expected to work with a dangerous horse; or ride a car with knowledge that the brakes are defective and the driver incompetent; or he may enter a baseball park, sit in an unscreened seat, and thus consent that the players proceed with the game without taking any precautions to protect him from being hit by the ball. The result is that the defendant is simply relieved of the duty which would otherwise exist." (Emphasis added.)

Viewing the facts, as we must, in a light most favorable to giving the instruction, *Evans v. Pickett*, 102 Ariz. 393, 430 P.2d 413 (1967); *Casey v. Marshall*, 64 Ariz. 232, 168 P.2d 240 rehearing denied 64 Ariz. 260, 169 P.2d 84 (1946), and applying them to the principles of law just discussed, we find that they reflect only a failure on the part of plaintiff to fully appreciate and comprehend the consequences of his own acts in requesting that the defendant drive. We point to specific and essentially uncontroverted testimony of the parties to support our conclusion in that regard.

(to defendant)

"Q. I believe you slept all the way (from Pomona) to Blythe, didn't you?

"A. Well, that's the way it's put in the record.

"Q. I beg your pardon?

"A. I was asleep.

"Q. So, I understand you correctly, you slept all the way to Blythe, or if you were awake for a very few minutes, would that be a fair statement?

"A. Yes.

\*　　\*　　\*　　\*　　\*　　\*

"Q. Okay, At Blythe, your brother had *no idea about you being sleepy* or drowsy or that you couldn't drive, because at Blythe you felt like you could drive; isn't that correct?

"A. Well, I don't see how he could know whether I was sleepy or not sleepy, because he wasn't me.

"Q. And at that time—that's my point, Mr. McGriff—and at that time you didn't tell him you were sleepy, did you?

"A. No, I didn't.

"Q. And in fact, when the air hit you, you felt great?

"A. That's true."

Obviously the central question here is whether plaintiff *knew* at the time defendant resumed driving at Blythe that he was drowsy and might well go to sleep while at the wheel. On the issue of such knowledge plaintiff testified as follows:

"Q. Did he tell you at that time (Blythe) that he couldn't drive?

"A. No. He said he could drive.

"Q. Did he ever tell you at the time that you were at Blythe that he was too sleepy to drive?

"A. No. He said he was ready to drive. He didn't mention anything about sleep at all."

Testimony from the defendant is also relevant here:

"Q. Okay. All right, at Blythe, you woke up; is that correct?

"A. Yes.

\*　　\*　　\*　　\*　　\*　　\*

"Q. All right, and did you tell him that you were too sleepy to drive when you were at Blythe?

"A. No.

"Q. In fact, when you got to Blythe, you told him you felt like driving, or otherwise you would have stopped or told him you couldn't drive just like you did outside of Pomona; isn't that correct?

"A. That's true.

"Q. If you hadn't felt like driving that vehicle, you would have never gotten behind the wheel?

"A. Never gotten behind the wheel.

"Q. And you would have told him at Blythe that you didn't feel like driving if

you hadn't felt like driving; isn't that correct?

"A. That's true."

■ Our search of the record has failed to disclose any evidence that alerted plaintiff to the danger that defendant was fatigued or drowsy to the point that he might well fall asleep at the wheel, or that he impliedly consented to relieve defendant from any duty to remain awake by requesting that he drive. Although one may assume the risk of negligence of another if he is fully informed of such negligence, one is not, under the doctrine of assumption of the risk, bound to anticipate the negligent conduct of another. *Hildebrand v. Minyard*, supra; *Vierra v. Fifth Avenue Rental Service*, 60 Cal.2d 266, 32 Cal.Rptr. 193, 383 P.2d 777 (1963); *Rogers v. Los Angeles Transit Lines*, 45 Cal.2d 414, 289 P.2d 226 (1955).

Certainly plaintiff is charged with knowledge of the magnitude of the risk if the defendant did go to sleep while driving the automobile. He was also bound to know that loss of sleep and physical fatigue render a driver incapable of properly and safely operating a vehicle. However, the uncontroverted evidence establishes that plaintiff thought defendant was rested enough to drive safely at the time he turned over the wheel of the automobile at Blythe. Neither was there an obvious danger chargeable to plaintiff. It is true that defendant was in the course of a long trip and unquestionably his sleep and rest had been substantially interrupted. However, plaintiff knew that he had just slept for a substantial period of travel and there was nothing to "red-flag" a dangerous situation. If defendant was in a state of drowsiness and fatigue it was not apparent and it was not known to plaintiff when he asked him to drive and then slept while he did.

Cases bearing close analogy to the one here have been cited to this Court by appellant. They reflect instances in which recovery was denied on the ground of assumed risk in passenger-driver situations when the accident was caused by weariness or intoxication of the driver. Some of them admittedly are difficult to distinguish. However, we find that in each of the cited cases the passenger-guests were found to have *realized* the hazards involved. For instance, in *Storlie v. Hartford Accident & Indemnity Co.*, 251 Wis. 340, 28 N.W.2d 920 (1947) the occupants of the car had testified that the driver had not evidenced sleepiness; the owner-passenger had testified that the driver had assured him she was not sleepy; an occupant awake at the time of the accident had noticed no peculiarities in the handling of the car and further, testified that she and the driver were listening to the radio and that the driver at no time said anything to indicate that she was sleepy. The court, however, after tracing the long, tiring day, concluded, in spite of the occupants' denial, that ". . . all *knew* that the driver must have been weary, as the guests themselves were." 28 N.W.2d at 922. (Emphasis added.)

*Storlie* must be interpreted as concluding that the occupants' protestations of knowledge could not fly in the face of facts clearly indicating notice of the dangerously fatigued condition of the driver. However, *Storlie* can be distinguished on its facts in that there was no opportunity for rest or sleep for the driver. The opposite is true in the case before us.

As stated in *Bryant v. The Thunderbird Academy*, 103 Ariz. 247, 249, 439 P.2d 818, 821 (1968) to invoke a doctrine of assumed risk ". . . it is essential that the risk or danger shall have been known to and appreciated by plaintiff or that it shall have been so obvious that it must be taken to have been known or comprehended."

We are aware that Art. 18, § 5 of the Arizona State Constitution provides:

"The defense of contributory negligence or assumption of risk shall in all cases whatsoever, be a question of fact and shall at all times be left to the jury."

■ Thus, whether a plaintiff knows of the existence of the risk, or whether he understands and appreciates its magnitude

and its unreasonable character, is a question of fact to be determined by the jury under proper instructions. However, Arizona appellate courts have repeatedly held that where assumption of the risk has been pleaded as a defense and where no evidence is presented from which a reasonable person might infer that such assumption does exist, the trial judge must withdraw such issue from the jury. In such a case the constitutional requirements of Art. 18, § 5 do not apply. See *Chavez v. Pima County*, 107 Ariz. 358, 488 P.2d 978 (1971); also *City of Tucson v. Wondergem*, 105 Ariz. 429, 466 P.2d 383 (1970); *Sax v. Kopelman*, 96 Ariz. 394, 396 P.2d 17 (1964); *Morris v. Aero Mayflower Transit Co.*, 73 Ariz. 390, 242 P.2d 279 (1952); *Citizens Utilities Co. v. Firemen's Ins. Co.*, 73 Ariz. 299, 240 P.2d 869 (1952); *Sweet v. Ybarra*, 13 Ariz.App. 101, 474 P.2d 460 (1970).

Again viewing the evidence in a light most favorable to the giving of the assumption of the risk instruction, we still do not feel that it rises to the requirement of substantial evidence from which reasonable persons might have inferred that plaintiff knew that there was a risk that defendant was an unreliable driver and apt to fall asleep while driving. See *Reichardt v. Albert*, 89 Ariz. 322, 361 P.2d 934 (1961); *City of Tucson v. Holliday*, 3 Ariz.App. 10, 411 P.2d 183 (1966). As to the requirement that there be substantial evidence, in *Morris v. Aero Mayflower Transit Co.*, supra, 73 Ariz. at 395, 242 P.2d at 282, it was said:

"'. . . [u]nless, therefore, there was some substantial evidence from which a reasonable man might have inferred it existed, the court should not have submitted the issue to the jury.'"

While under the circumstances here the jury might well find such acts to constitute contributory negligence, they do not permit a finding of assumption of the risk. Knowingly taking a risk without more, fails to differentiate this situation from the commonplace, for everytime a person is traveling in a car on the highway, if he is a reasonable person he knows that he is taking a calculated risk. *City of Tucson v. Holliday*, supra.

■ As stated in *Hildebrand*, there is often a failure to understand the difference between contributory negligence and assumption of the risk. The latter is of a very limited nature because the standard to be applied is a subjective one; what the particular plaintiff in fact sees, knows, understands, and appreciates. *Hildebrand v. Minyard*, supra; *Chavez v. Pima County*, supra; *City of Tucson v. Holliday*, supra. In turning aside a trial court instruction on assumption of risk, our Supreme Court noted the distinction in *Chavez v. Pima County*, supra, 107 Ariz. at 360, 488 P.2d at 980:

"Plaintiff's failure to know the facts or circumstances constituting the hazard or to fully appreciate and comprehend the consequences of his act is not properly a matter of assumption of risk but, rather, a matter of contributory negligence."

We find that giving the instruction on assumption of the risk constituted reversible error.

## CONTRIBUTORY NEGLIGENCE

Although not essential to our disposition of this appeal, we next consider the propriety of the contributory negligence instruction. Again we peruse the evidence in a light favorable to the giving of the instruction. *Evans v. Pickett*, supra; *Casey v. Marshall*, supra.

■ As a general principle, a passenger in an automobile may rely upon the assumption that the driver will exercise due care. But there is a point where passive reliance upon the driver ends and the duty of a passenger to exercise ordinary care for his own safety begins. Arizona law makes it clear that under proper circumstances a non-driving occupant in an automobile can be found to be contributorily negligent. *Mitchell v. Colquette*, 93 Ariz. 211, 379 P.2d 757 (1963). The mere fact

that plaintiff was a passenger in the car driven by defendant does not relieve him from exercising the care and caution that an ordinarily prudent person would have exercised under similar circumstances. *Noel v. Ostlie,* 42 Ariz. 113, 22 P.2d 831 (1933); *Perini v. Perini,* 64 N.M. 79, 324 P.2d 779 (1958).

The jurors could well have found that plaintiff should have been on notice that defendant's ability to drive alertly was impaired because of the hour and the long tiring trip, and that he was negligent in suggesting to defendant that they commence the return drive to Phoenix in the early morning hours, or in allowing defendant to drive at Blythe while he, the plaintiff, went to sleep. See *Rader v. Fleming,* 429 P.2d 750 (Okl.1967). The court properly gave the instruction on contributory negligence.

## RES IPSA LOQUITUR

Lastly plaintiff assigns as error the trial court's refusal to give plaintiff's requested instruction on res ipsa loquitur and its concomitant inference of negligence. We find the instruction inapplicable.

Reasonable minds could not differ that the evidence conclusively established that the physical cause of the occurrence was defendant's failure to stay awake while driving, thereby excluding any inferences of causation from any other physical act.

In fact, plaintiff concedes in his brief that "[t]here was no evidence for the jury to conclude that the defendant did anything other than go to sleep." Defendant agreed with this observation. Thus, while such evidence might well indicate prima facie negligence or negligence as a matter of law, since in the ordinary case one cannot go to sleep while driving an automobile without having relaxed the vigilance which the law requires and it was within de-

fendant's control to keep awake or cease driving, *Brownell v. Freedman,* 39 Ariz. 385, 6 P.2d 1115 (1932); *Lewis v. Cooley,* 14 Ariz.App. 33, 480 P.2d 370 (1971), it does not support res ipsa loquitur. *O'Donnell v. Maves,* 103 Ariz. 28, 436 P.2d 577 (1968).

Res ipsa loquitur is predicated upon plaintiff's inability to specify the act of negligence which caused his injury, and therefore, permits him to rely on the doctrine as a substitute for proof. *Throop v. F. E. Young & Co.,* 94 Ariz. 146, 382 P.2d 560 (1963); *Drumm v. Simer,* 68 Ariz. 319, 205 P.2d 592 (1949). There is no basis or need for the operation of any inference or presumption of negligence under res ipsa loquitur where the evidence presented at trial clearly established the precise cause of plaintiff's injury.

Plaintiff has cited *Lewis v. Cooley,* supra where the plaintiff was a passenger in the defendant's automobile in the early morning hours of New Year's Day. Plaintiff fell asleep and was not awakened until the impact of an accident in which the car ran off the road and the defendant driver was killed. The court held that the case was a proper one for submission to the jury on the doctrine of res ipsa loquitur, since plaintiff was in no position to show the particular circumstances resulting in her injuries.

Here, however, the proof consisted of direct evidence which clearly established the circumstances leading up to and causing the accident in question. The defendant told the investigating officer that he thought he fell asleep at the wheel, and all the physical evidence at the scene and the testimony of an eyewitness so indicated.

Judgment reversed and cause remanded for a new trial.

JACOBSON, P. J., and SCHROEDER, J., concurring.