726 P.2d 580

**DEL E. WEBB CORPORATION, Armex Land Corporation, et al., Petitioners,**

v.

**The SUPERIOR COURT OF ARIZONA for MARICOPA COUNTY, The Honorable John Foreman, Division 45, Respondent,**

**and**

**Harbans Kaur DOMAN, et al., Respondent Real Parties in Interest.**

No. CV–86–0165–SA.

Supreme Court of Arizona, En Banc.

Sept. 17, 1986.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears, Phoenix by Richard J. Woods, Nicholas J. Wallwork, for petitioners.

Langerman, Begam, Lewis and Marks, Phoenix by Richard W. Langerman, Amy G. Langerman, for respondents and real parties in interest.

FELDMAN, Justice.

Petitioner, defendant in the action below, brings this special action[1] asking us to reverse a superior court ruling that the affirmative defenses of contributory negligence and assumption of the risk are unavailable to defendants in dram shop litigation. Because petitioner has no equally plain, speedy, or adequate remedy by appeal, we granted review. Rule 3, Ariz.R.P. Spec.Act., 17A A.R.S. We have jurisdiction under Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

### FACTS

On June 1, 1978 Mr. Gurdial S. Doman (Doman) was found drowned in the swimming pool of defendant's Mountain Shadows Resort. The evening before, Doman purchased six drinks at the resort before dinner, one during dinner, and five more after dinner, before leaving the resort's lounge at 1:00 a.m. closing time. Security guards on their rounds at 2:20 a.m., 4:45 a.m., and 5:00 a.m. did not see Doman at the swimming pool, which was lit both internally and externally; nevertheless, his body was found in the pool at 6:00 a.m. with his trousers rolled up to his calf. His shoes had been placed next to the pool, socks tucked inside.

The autopsy report revealed that Doman had a blood alcohol content of .27 percent at the time of his death. The Medical Examiner found that his body had been in the pool between two and five hours. The parties predictably argue over a number of questions: whether Doman was a chronic alcoholic; whether the bartender should have known that he was intoxicated; the nature of the resort's practice in dealing with intoxicated patrons; whether Doman consumed more alcohol after he left the lounge; and what Doman's blood alcohol level would have been had he not consumed any more alcohol after leaving the lounge. We do not, of course, attempt to resolve these factual issues.

Doman's widow (plaintiff) filed a wrongful death action on behalf of herself and

---

**1.** In Arizona, relief formerly obtained by writs of prohibition, mandamus or certiorari is now obtained by "special action." Rule 1, Arizona Rules of Procedure for Special Actions, 17A A.R.S.

the surviving children on May 30, 1980. Defendant raised the affirmative defenses of contributory negligence and assumption of the risk.[2] On October 5, 1982, applying existing law, the trial court granted defendant's motion for summary judgment, holding that the seller of intoxicating liquor was not liable for negligently serving intoxicated customers.

While plaintiff's appeal was pending, this court issued the companion decisions of *Brannigan v. Raybuck*, 136 Ariz. 513, 667 P.2d 213 (1983) and *Ontiveros v. Borak*, 136 Ariz. 500, 667 P.2d 200 (1983), both of which had retroactive application. We held that sellers of intoxicating liquor could be held liable for negligence. As a result, plaintiffs moved the court of appeals to suspend their appeal and revest jurisdiction in the superior court to reconsider its judgment in light of *Brannigan* and *Ontiveros.* After the motion was granted, the trial court, relying on *Brannigan,* vacated the summary judgment in favor of defendant. It also granted plaintiff's motion for partial summary judgment, holding that the defenses of contributory negligence and assumption of the risk were legally unavailable even if factually supported.

Defendant filed a petition for special action claiming that the trial court had abused its discretion. We accepted review and granted a temporary stay of the trial court proceedings to determine whether the defenses of contributory negligence and assumption of the risk are legally available in so-called dram shop cases. Rule 3, Ariz.R. P.Spec.Act., 17A A.R.S.

### COMMON LAW OR STATUTORY DUTIES OF CARE AND COMMON LAW AFFIRMATIVE DEFENSES

#### A. *Background*

Traditionally, a plaintiff's recovery for injuries caused by a defendant's breach of a duty of care has depended on the plaintiff's total lack of contributory fault. W. PROSSER & W. KEETON, HANDBOOK ON THE LAW OF TORTS § 65, at 461 (5th ed. 1984). Assumption of the risk rests upon plaintiff's knowledge of the risk of harm posed by defendant's conduct and his consent to accept that risk. *McGriff v. McGriff,* 114 Ariz. 323, 325, 560 P.2d 1230, 1232 (1977); W. PROSSER & W. KEETON, § 68, at 489. Under traditional principles of tort law, assumption of the risk was also a complete bar to recovery. W. PROSSER & W. KEETON, § 68, at 481. The defenses were ordinarily available whether defendant's conduct breached a duty established by either common law or statute. Restatement (Second) of Torts § 483 (1965);[3] W. PROSSER & W. KEETON, § 65, at 461.

Both *Ontiveros* and *Brannigan* imposed a common law duty[4] on licensed liquor vendors to take affirmative measures to control or avoid increasing the danger posed by the conduct of their patrons. *Ontiveros,* 136 Ariz. at 508–09, 667 P.2d at 208–09. Sellers must exercise reasonable care not to serve persons already intoxicated. *Id.* at 509, 667 P.2d at 209. Also, violation of the statutory prohibition against selling liquor to intoxicated persons was held to be negligence per se, unless the defendant could show the violation was excusable. *Brannigan,* 136 Ariz. at 518, 667 P.2d at 218.

Plaintiff argues that permitting defendant to raise either contributory negligence or assumption of the risk would nullify *Brannigan* and *Ontiveros* because, by definition, in every case in which the tavern owner had breached his duty there would also be fault on the patron's part. Therefore, the tavern owner would be immunized from liability and the duty of care imposed

---

2. Plaintiff filed the action four years before A.R.S. § 12–2505 made comparative negligence available to litigants in negligence actions. *See Hall v. A.N.R. Freight System, Inc.,* 149 Ariz. 130, 717 P.2d 434 (1986).

3. Restatement (Second) of Torts will be referred to hereafter as Restatement § ___.

4. This result was adopted by the legislature in Laws 1985, ch. 148, § 1.

on him made illusory. This question was left open in *Brannigan*, 136 Ariz. at 518 n. 2, 667 P.2d at 218 n. 2. In examining this argument, we turn first to its statutory basis.

## B. *"Exceptional Statutes"*

Some statutes create a duty or impose a standard of conduct; breach of the statute is equated with negligence. *Ontiveros*, 136 Ariz. at 510, 667 P.2d at 210; *Orlando v. Northcutt*, 103 Ariz. 298, 300, 441 P.2d 58, 60 (1968); *Mercer v. Vinson*, 85 Ariz. 280, 284, 336 P.2d 854, 857 (1959); Restatement § 285 comment b, § 286; *see also* W. PROSSER & W. KEETON, § 36. Arizona has long recognized that violation of such statutes is negligence per se. *Brannigan*, 136 Ariz. at 517, 667 P.2d at 217; *Salt River Valley Water Users' Ass'n. v. Compton*, 39 Ariz. 491, 496, 8 P.2d 249, 251 (1932); *Young v. Campbell*, 20 Ariz. 71, 75, 177 P. 19, 21 (1918).

Included in the class of statutes that impose a standard of conduct of the kind which creates civil liability is a narrow subclass called "exceptional statutes." Restatement § 483 comment c. The violation of an exceptional statute not only gives the injured party a private cause of action and establishes defendant's negligence per se, but, in addition, denies the defendant the affirmative defenses of contributory negligence and assumption of the risk. This is a form of absolute liability for breach of statutory duty. W. PROSSER & W. KEETON § 65, at 461–62; Restatement § 483. Assertion of the traditional defenses is precluded because permitting plaintiff's fault to be raised as a *bar* to his recovery would defeat the fundamental purpose of a statute specifically enacted to protect the plaintiff against his inability to protect himself. *Id.*

In general, courts will bar these defenses only when they find a clear legislative purpose to impose absolute liability for statutory violation. W. PROSSER & W. KEETON § 65, at 461. Thus, an initial distinction must be drawn between statutes intended for the protection of the general public and those "exceptional" in the sense that they were intended to protect a particular class of plaintiffs against their own acts. The former are unlikely to qualify as exceptional statutes. *Compare Dart v. Pure Oil Co.*, 223 Minn. 526, 27 N.W.2d 555 (1947) (statute on handling of volatile oils is for protection of public, not special class) *with Zerby v. Warren*, 297 Minn. 134, 210 N.W.2d 58 (1973) (statute prohibiting sale of glue to minors is an exceptional statute). *See generally* Prosser, *Contributory Negligence as Defense to Violation of Statute*, 32 MINN.L.REV. 105 (1948). Thus, general safety statutes merely establish a duty of ordinary care for the protection of the public against an unreasonable risk; the plaintiff's own negligent conduct may bar his recovery, just as with a breach of a common law duty. W. PROSSER & W. KEETON § 65, at 461.

Statutes intended to protect people from the consequences of their own conduct primarily are those applicable to specific groups deemed incapable of protecting themselves, Restatement § 483 comment c, such as the mentally deficient and children. Children, for instance, will not be barred from recovery by their own conduct if their injury was the result of a violation of a statute expressly aimed at protecting them from a particular harm. Child labor laws are a typical example of statutes intended to place all responsibility on the employer. Prosser, *supra*, 32 MINN.L.REV., at 119. *See also Tamiami Gun Shop v. Klein*, 116 So.2d 421 (Fla.1959) (statute prohibiting firearm sales to minors). *But see Collier v. Stamatis*, 63 Ariz. 285, 162 P.2d 125 (1945) (parent of minor who purchased liquor not protected).

In *Tamiami*, defendant sold a rifle to the 16–year-old plaintiff, who represented himself as "over 18." Plaintiff was injured when the car in which he was riding went over a bump and the gun discharged. The court held that a statute prohibiting sales of arms to minors was intended to protect the minor from the carelessness to be expected of children and precluded the defenses of contributory negligence and as-

sumption of the risk. 116 So.2d at 423; *see also Morris v. Farley Enterprises, Inc.,* 661 P.2d 167 (Alaska 1983) (complicity of a minor who is a party to an illegal liquor transaction does not preclude his action against the liquor seller). However, merely because a child was injured as a result of a statutory violation is insufficient to bar the defenses. In *Stuchbery v. Harper,* 87 Idaho 12, 390 P.2d 303 (1964), a 17–year-old girl was killed in a boating accident which resulted from the boat operator's violation of a general safety statute. Nevertheless, the minor's action was barred because the statute was for the protection of the general public, not just children.

Certain classes of adults are also deemed unable to protect themselves under certain circumstances. Examples include inherently hazardous jobs, such as construction or mining, over which the regulated person, usually an employer, has control. Restatement § 483. The policy served is protection of those exposed to a dangerous job or location but who are economically or otherwise unable to guard themselves against the hazards created by the statutory violations of their employers or supervisors.[5] For example, employees in a factory may not be able to provide their own fire protection. Statutes of this type are deemed to express a legislative intent to place the *entire* responsibility for such harms on the defendant.

## C. *Arizona Law*

 Our statute provides that it is unlawful:

> For a licensee or other person to serve, sell or furnish spirituous liquor to an intoxicated or disorderly person, or for a licensee or employee of the licensee to allow or permit an intoxicated or disor-

derly person to come into or remain on or about the premises, ...

A.R.S. § 4–244(14).

For a variety of reasons, we believe this statute is not an exceptional statute designed to protect those who cannot protect themselves. First, it does not express a clear legislative intent to place absolute liability for harm sustained by intoxicated adults on those in the business of selling intoxicating liquor. We cannot imply such a purpose. Until our decisions in *Ontiveros, supra,* and *Brannigan, supra,* the statute had never been interpreted to provide a civil remedy to the patron. Even in those cases, we did not find that the statute had been enacted as a civil damage act or dram shop act and acknowledged that the legislative purpose was " 'to regulate the business rather than to enlarge civil remedies.' " *Ontiveros,* 136 Ariz. at 510, 667 P.2d at 210 (quoting *Collier v. Stamatis,* 63 Ariz. 285, 289, 162 P.2d 125, 127 (1945)). We went on to hold in *Ontiveros* that there was a common law duty, that the statute "was intended partly for the safety of others," and that the "duty imposed by [the] statute" was one "adopted by the common law." *Ontiveros,* 136 Ariz. at 511, 667 P.2d at 211. *But see id.* at 513, 667 P.2d at 213 (Holohan, C.J., concurring). Thus, the courts of this state have consistently stated that A.R.S. § 4–244 and its predecessors[6] were intended to regulate the liquor business and not to broaden civil liability of tavern keepers. *See, e.g., Collier v. Stamatis, supra; see also Thompson v. Bryson,* 19 Ariz.App. 134, 505 P.2d 572 (1973); *Pierce v. Lopez,* 16 Ariz.App. 54, 59, 490 P.2d 1182, 1187 (1971). We cannot now hold that the legislature intended this same statute to render tavern owners absolutely liable and remove from their patrons all civil responsibility for their own

---

**5.** See W. PROSSER & W. KEETON § 65, at 461, nn. 99 and 1–4, for a list of such statutes with citations to the case law. Statutes of this type include workplace safety acts, building safety acts and appliance inspection and safety acts. *Id.*

**6.** Section 72–113 (Code 1939 and Supp.1952) and § 1886h (Code 1913, Supp.1936). We are also cognizant of Laws ch. 329, art. 2 (1986) to become A.R.S. §§ 4–311 and 4–312, which limits liability to and excludes damages for injured patrons. The statute does not apply to this case and we express no opinion as to its meaning or constitutionality.

conduct. *Parrett v. Lebamoff,* 408 N.E.2d 1344 (Ind.Ct.App.1980).

Second, what has been said makes it obvious that the statute was not intended solely to protect the limited class of intoxicated people. We believe the statutes that prohibit sale of liquor to minors and intoxicated persons also—and perhaps primarily—were intended to protect the general public. *See Tome v. Berea Pewter Mug, Inc.,* 446 N.E.2d 848, 852, 854, 4 Ohio App.3d 98, 102, 104 (Ohio Ct.App.1982) (the inebriated or minor imbiber also violates the law by driving). We have adopted common law dram shop liability and have concluded that the prohibition on sales was intended as a general safety measure rather than a narrow protective statute. *Ontiveros,* 136 Ariz. at 510, 667 P.2d at 210.

Third, although recently there has been dramatic change in the law of dram shop liability, we do not think it is in the best interests of the public to impose absolute liability where *no* liability previously existed for selling liquor to "an able-bodied person." *Cruse v. Aden,* 127 Ill. 231, 234, 20 N.E. 73, 74 (1889), *quoted in* Comment, *Tort Liability for Serving Alcohol: An Expanding Doctrine,* 46 MONT.L.REV. 381, 381 (1985).

Fourth, we believe that the strongest argument favoring the imposition of absolute liability is not fully applicable in Arizona. The question of recovery by the patron for injuries caused by his own affirmative acts is essentially a question of contributory negligence and assumption of the risk. *Herrly v. Muzik,* 374 N.W.2d 275, 279–80 (Minn.1985) (Scott, J., dissenting); *Tome v. Berea Pewter Mug, Inc., supra.* Many courts holding that the affirmative defenses may not be raised in a dram shop action base their decision on the argument that permitting such defenses would absolutely bar the action in almost every case and therefore make the duty recognized by the cause of action illusory. *See, e.g., Soronen v. Olde Milford Inn, Inc.,* 46 N.J. 582, 589–90, 218 A.2d 630, 634–35 (1966); *cf. Zerby v. Warren, supra.* That argument has much less weight in Arizona after the adoption of comparative negligence. *Herrly v. Muzik,* 374 N.W.2d at 279–80 (Scott, J., dissenting).

Of course, the case before us is governed by prior law. However, for reasons peculiar to Arizona the argument was not as compelling even before the effective date of the comparative negligence statute. Under art. 18, § 5 of the Arizona Constitution, contributory negligence and assumption of the risk are always questions of fact for the jury. Thus these defenses cannot bar plaintiff's suit as a matter of law, and a directed verdict can never be granted even if the evidence establishing the defense is uncontradicted. *Chambers v. Western Arizona CATV,* 130 Ariz. 605, 607, 638 P.2d 219, 221 (1981). Furthermore, this constitutional provision permits jurors to award damages even if they find plaintiff was contributorily negligent or had assumed the risk. *Grant v. Arizona Public Service Co.,* 133 Ariz. 434, 442, 652 P.2d 507, 515 (1982); *Layton v. Rocha,* 90 Ariz. 369, 371, 368 P.2d 444, 445 (1962). The rationale is that art. 18, § 5 deprived the court of "the power to instruct the jury as to what its verdict must be." *Layton,* 90 Ariz. at 371, 368 P.2d at 445. By requiring the jury to be the sole arbiter of contributory negligence and by impliedly allowing the jury to balance the plaintiff's conduct against that of the defendant, the Arizona Constitution has been interpreted as effectively transforming contributory negligence into a form of de facto comparative negligence. Note, *Defining State Law According to State Court Results: The Arizona Contributory Negligence Rule in Federal Tort Claim Cases,* 26 ARIZ.L.REV. 377, 379 (1984); Comment, *Comparative Negligence in Arizona,* 1979 ARIZ.ST.L.J. 581, 587; *The Arizona Supreme Court 1970–71 —Contributory Negligence—Confusion out of Compromise,* 13 ARIZ.L.REV. 556, 562 (1971).

Thus, unlike most states, in Arizona the affirmative defenses never constituted a complete bar to a dram shop action and the abrogation of those defenses was not necessary in order to prevent the cause of

action from becoming illusory. It is quite possible that under particular facts a jury will find in favor of a plaintiff even though the affirmative defenses are legally and factually established. *Sagadin v. Ripper,* 175 Cal.App.3d 1141, 1165–68, 221 Cal.Rptr. 675, 690–92 (Cal.App.3d 1985). Certainly, such a possibility acts as a deterrent on the conduct of the supplier. The explicit adoption of comparative fault in all cases filed after August 31, 1984,[7] further reduces any perceived need to abrogate the affirmative defenses in the future.

Finally, we believe that the preservation of those defenses in dram shop actions would be good judicial policy, at least in cases involving service to intoxicated patrons.[8] The interests of the public are better served by the common law principles that make most persons responsible for their conduct. *Congini by Congini v. Portersville Valve Co.,* 504 Pa. 157, 162, 470 A.2d 515, 518 (1983). Allowing the assertion of the common law defenses furthers both the public policy of deterring drunk driving and the judicial policy of limiting rules of nonresponsibility for special groups. *Ontiveros,* 136 Ariz. at 512, 667 P.2d at 212.

Thus, we do not believe that the statute may be interpreted to abolish the affirmative defenses in dram shop negligence actions. For many of the same reasons, we do not believe that we should contemplate abolition of such defenses as a matter of common law decision. The common law has recognized contributory negligence and assumption of the risk as defenses in tort actions for almost 200 years. W. PROSSER & W. KEETON, *supra* § 65, at 416 n. 1. So far as comes to mind, no exceptions to the availability of these defenses have been recognized except those based on the quality of defendant's conduct. Thus, contributory negligence is no defense where defendant was grossly negligent. *Southern Pacific Transportation Co. v. Lueck,* 111 Ariz. 560, 574, 535 P.2d 599, 613 (1975),

*cert. denied,* 425 U.S. 913, 96 S.Ct. 1510, 47 L.Ed.2d 763 (1976). Nor will contributory negligence affect plaintiff's right to recover in situations where the "humanitarian doctrine" applies. Thus, defendant's last clear chance to avoid the accident extinguishes plaintiff's contributory negligence. *Schneider v. Macari,* 111 Ariz. 483, 485, 533 P.2d 540, 542 (1975); *Casey v. Marshall,* 64 Ariz. 260, 169 P.2d 84 (1946). We are not disposed to recognize new common law exceptions on the availability of the defenses based on the nature of defendant's business. In this court's view, the same rules of liability and responsibility should apply to all of suitable age and discretion. *Cf. Salt River Project Agricultural Improvement and Power Dist. v. Westinghouse Electric Corp.,* 143 Ariz. 368, 694 P.2d 198 (1984).

Other than the common law exceptions just mentioned, the only other recognized exceptions to the availability of the common law defenses are those based upon legislative enactment. One of these is the "special statute" which evinces legislative intent to abolish the defenses. As indicated *ante,* 151 Ariz. at 168–169, 726 P.2d 584–585, the statutes relevant to the facts of this case do not evince such a purpose. The other type of legislative enactment which commonly affects the availability of the common law defenses is the comparative negligence doctrine. As indicated *ante,* 151 Ariz. at 169, 726 P.2d at 585, we have always had a disguised version of this in Arizona under art. 18, § 5 of our constitution and have now been given the doctrine expressly by A.R.S. § 12–2505 (Supp.1985). We deem it inappropriate to add to these constitutional and legislative provisions by judicial decision. If by judicial decision we were inclined to give any group such a special immunity from the consequences of their own conduct, consumers of alcohol would have a low priority.

---

7. *See Shea v. Superior Court,* 150 Ariz. 271, 723 P.2d 89 (1986) (cannot refile to take advantage of change in statute).

8. This opinion does not reach the degree to which these defenses are applicable in cases involving minors.

We hold, therefore, that the common law affirmative defenses of contributory negligence and assumption of the risk may be asserted in common law dram shop actions brought prior to the effective date of the comparative negligence statute. *A fortiori* such defenses may be asserted in actions brought after the effective date of the statute.

The trial court therefore erred in holding the defenses were legally unavailable even if factually supported. Relief is granted and the action remanded for further proceedings not inconsistent with this opinion.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS, J., concur.

CAMERON, J., did not participate in the determination of this matter.